IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CLIFFORD J. RUSSELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil No. 16-cv-1251-JPG-CJP |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant.[1] ) | |

## MEMORANDUM and ORDER

In accordance with 42 U.S.C. § 405(g), plaintiff Clifford J. Russell seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits (DIB) and Supplemental Security Insurance (SSI) benefits pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff applied for benefits in May 2013, alleging that he became disabled as of June 15, 2007. He later amended his onset date to January 1, 2012. After holding an evidentiary hearing, ALJ Raymond L. Souza denied the application on September 8, 2016. (Tr. 17-29.) The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 3.) Administrative remedies have been exhausted and a timely complaint was filed in this Court.

## Issues Raised by Plaintiff

Through counsel, plaintiff makes the following argument:

1. The ALJ's findings at step five were not supported by substantial evidence because (1) the ALJ failed to resolve plaintiff's objection to the basis for the VE's testimony, and (2) failed to inquire into the reliability of the VE's testimony.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. See, *Casey v. Berryhill*, 853 F.3d 322 (7th Cir. 2017). She is automatically substituted as defendant in this case. See Fed. R. Civ. P. 25(d); 42 U.S.C. § 405(g).

## Applicable Legal Standards

To qualify for DIB or SSI, a claimant must be disabled within the meaning of the applicable statutes.[2] For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit. 20 C.F.R. § 404.1572.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education,

---

[2] The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

> and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three. If the claimant does not have a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job. *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984). See also, *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (Under the five-step evaluation, an "affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled…. If a claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy.").

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of judicial review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. See, *Books v. Chater*, 91 F.3d 972, 977–78 (7th Cir. 1996) (citing *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995)). This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## **The Decision of the ALJ**

ALJ Souza followed the five-step analytical framework described above. He determined that Mr. Russell is insured for DIB through December 31, 2018, and that he had not engaged in substantial gainful employment since the alleged date of disability. He found that plaintiff had severe impairments of peripheral neuropathy and migraine headaches, which did not meet or equal a listed impairment.

The ALJ found that plaintiff had the residual functional capacity (RFC) to perform work at the sedentary exertional level, with a number of physical and mental limitations. Based on the testimony of a vocational expert (VE), the ALJ found that plaintiff was not able to do his past relevant work. He was, however, not disabled because he was able to do other jobs which, according to the VE's testimony, exist in significant numbers in the national economy.

Before the hearing, plaintiff's representative submitted a brief pointing out the importance of VE testimony on job numbers and the difficulty of "verifying the accuracy of Step 5 vocational testimony at the time of the hearing." He requested an opportunity to submit a post-hearing brief. (Tr. 367.) His post-hearing brief objected to the VE's testimony on the numbers of jobs and requested production of the data on which she relied for her testimony. (Tr. 378-386.) The ALJ

denied plaintiff's objections in his written decision.

### The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. In view of the point raised by plaintiff, the Court will not summarize the medical evidence.

1. **Agency Forms**

Plaintiff was born in 1983. (Tr. 277.) He had worked in the past as a fast food restaurant cook, a janitor, a custodian, and as a caretaker paid by the State of Illinois. (Tr. 306.)

2. **Evidentiary Hearing**

Plaintiff was represented by an attorney at the evidentiary hearing on July 8, 2016. (Tr. 38.)

Following plaintiff's testimony, a vocational expert (VE) testified. The ALJ asked whether she knew her testimony "must be consistent with the DOT and companion publications?" She replied that she did, and she agreed to let the ALJ know if her testimony was inconsistent. (Tr. 50.)

The VE classified the exertional level of plaintiff's past work as medium. The ALJ asked the VE a hypothetical question which comported with the ultimate RFC assessment, that is, sedentary work with a number of physical and mental limitations. The VE testified that this person could not do plaintiff's past work. However, he could do other jobs such as document preparer, addressing clerk, and weight tester.[3] The VE testified that there were 110,000 document preparer jobs in the nation; there were 35,000 addressing clerk jobs in the in the nation, and there

---
[3] The transcript spells this last job as "rate tester." However, the VE cited DOT 539.485-010, which is the description for weight tester.

were 30,000 weight tester jobs in the nation. (Tr. 52.)

Plaintiff's counsel asked the VE to identify her source for the job numbers she testified to. She replied, "Department of Labor, Bureau of Labor Statistics, by way of Job Browser Pro software through SkillTRAN. And having worked in this field for 25 plus years. I've worked with many, many individuals and being familiar with what is available in the labor market." (Tr. 54.) Plaintiff's counsel then asked whether, if he were to put the weight tester job as identified by DOT number into the software, "would it come up 30,000 jobs?" The VE's reply was as follows:

> Well, I don't know how adept you are at using the software. I don't know what it would show if you plugged that in, however, the Department of Labor has made it very clear that they did not – they do not collect data, first of all, on a specific DOT basis. They do not collect data from every industry where jobs may be found, and they never have. Therefore, it is appropriate, and this is from publications that date back to when the DOT was still being published to add industries into that where these jobs may be found.

After a short discussion about how the VE used the software to count only full-time jobs, plaintiff's counsel objected to the "foundation for the numbers of jobs based on [sic] because of the DOT numbers do not match – or are not done by the labor statistics." The ALJ overruled the objection, stating that it would be addressed in the written decision. The ALJ did not ask any more questions of the VE. (Tr. 55-56.)

## Analysis

"The Commissioner bears the step-five burden of establishing that the claimant can perform other work that 'exists in significant numbers in the national economy.'" *Overman v. Astrue*, 546 F.3d 456, 464 (7th Cir. 2008), citing 20 C.F.R. § 404.1560(c)(2).

The testimony of a VE can constitute substantial evidence to support the ALJ's step five finding, but only if that testimony is reliable. *McKinnie v. Barnhart*, 368 F.3d 907, 910 (7th Cir.

6

2004). Although the Federal Rules of Evidence do not apply in administrative proceedings, expert witnesses still must use "reliable methods" to arrive at their conclusions. "If the basis of the vocational expert's conclusions is questioned at the hearing, however, then the ALJ should make an inquiry (similar though not necessarily identical to that of Rule 702 [Federal Rules of Evidence]) to find out whether the purported expert's conclusions are reliable." *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002). Further, while a vocational expert may give a "bottom line" answer, "the data and reasoning underlying that bottom line must be 'available on demand' if the claimant challenges the foundation of the vocational expert's opinions." *McKinnie v. Barnhart*, 368 F.3d 907, 911 (7th Cir. 2004), citing *Donahue*, 279 F.3d at 446.

Here, plaintiff's counsel challenged the foundation of the VE's opinions as to the number of jobs, both prior to and at the hearing. Therefore, the ALJ had a duty to inquire into the basis for the VE's opinions to determine whether her testimony was reliable. *Donahue, supra; McKinnie, supra*.

ALJ Souza failed to adequately inquire into the basis for the VE's opinions. He asked no questions regarding the source of her testimony regarding job numbers. He merely reminded her of her obligation to alert him if her testimony conflicted with information in the Dictionary of Occupational Titles. The ALJ overruled plaintiff's objection, finding that she had "significant experience from which to testify regarding job incidence in the local, regional, or national economy." He also said he was taking administrative notice of the "reliable job information cited by the vocational expert pursuant to 20 C.F.R. 404.1567(d) and 416.967(d)."[4] (Tr. 27.)

20 C.F.R. § 404.1566(d) provides that the agency "will take administrative notice of

---

[4] The ALJ's citations are incorrect; the correct regulations are §§ 404.1566 and 416.966(d).

reliable job information available from various governmental and other publications," including the Dictionary of Occupational Titles. The DOT is a "compendium of job descriptions published by the Department of Labor." *Browning v. Colvin*, 766 F.3d 702, 708 (7th Cir. 2014). As a source of reliable evidence, it has obvious shortcomings, since it is no longer published, the "current" edition is 23 years old, and most of the information in it is from 1977. *Browning, Ibid.*

In addition to being "obsolete," the DOT "contains no statistics regarding the number of jobs in a given job category that exist in the local, state, or national economy." *Herrmann v. Colvin*, 772 F.3d 1110, 1113 (7th Cir. 2014). See also, *Voigt v. Colvin*, 781 F.3d 871, 879 (7th Cir. 2015) ("[T]he *DOT* does not contain information on which to base an estimate of the number of available jobs of a particular kind.") Therefore, the ALJ's question about any conflict between the VE's testimony and information in the *DOT* did nothing to establish the reliability of the VE's conclusion as to the number of jobs.

The Seventh Circuit and other courts have repeatedly criticized the "inadequacy of vocational expert testimony." *Forsythe v. Colvin*, 813 F.3d 677, 680 (7th Cir. 2016)(collecting cases). The VE's testimony here was certainly inadequate.

The VE's C.V. is located at Tr. 364-366. The VE did not identify any specific training or experience that she relied upon for her job numbers. The ALJ did not cite any specific part of the VE's background either. It is not enough to rely on the VE's unspecified "experience." See *Herrmann*, 772 F.3d at 1113; *Browning,* 766 F.3d at 709 (7th Cir. 2014).

The VE said she relied on Bureau of Labor statistics "by way of Job Browser Pro software through SkillTRAN" and on reviewing the Bureau of Labor statistics website. She also said that the Bureau of Labor does not collect data on "a specific DOT basis," which suggests that simply

8

reviewing the Bureau of Labor statistics would not answer the question of how many jobs there are in a specific DOT job title.

The ALJ did not ask any questions about the SkillTRAN Job Browser Pro software program. This is a commercially produced software program that includes information from the DOT, along with additional information, including estimates of job numbers. SkillTRAN is not a government publication.[5]

The VE did not testify that the job numbers contained in SkillTRAN are accurate or reliable, or that SkillTRAN is generally accepted and relied upon by vocational experts. On its website, SkillTRAN LLC represents that its method of estimating job numbers is "the result of 20+ years of discontent with the 'generally accepted practice' among many vocational experts - often built on the faulty assumption that all DOT occupations occur with equal frequency within a given Census or OES Statistical Group."[6] The company describes it method as "a 'disruptive' new methodology - meaning that it shakes up the disability market and causes folks to reconsider traditional methods."[7]

SkillTRAN's description of its methodology was first posted in 2008. Its methodology may no longer be "new" or "disruptive." Today, it may very well be widely accepted by experts in the field. That is not an the issue for this Court to decide here. The problem is that the ALJ made no attempt to confirm that using SkillTRAN's numbers was a reliable method for the VE to formulate her opinions in this case.

---

[5] *See* SKILLTRAN, http://www.skilltran.com/index.php/products/pc-based-solutions /job-browser-pro, (last visited on August 14, 2017.)
[6] The Seventh Circuit has noted that many VEs use this "unacceptably crude" method of estimating job numbers. *Browning*, 766 F.3d at 709.
[7] SKILLTRAN, http://www.skilltran.com/index.php/support-area/documentation /216-job -numbers, pop-up box entitled "Method to Estimate DOT Employment using government statistics SkillTRAN LLC - June 2008," (visited on August 14, 2017.)

The Commissioner argues that the ALJ "carefully explained" how he resolved plaintiff's objections. The Court disagrees. The ALJ failed to grapple with the actual issue presented, which is identifying a reliable basis for the VE's testimony about job numbers. The Commissioner's brief suffers from the same omission. The DOT and the unidentified Bureau of Labor publications referred to by the VE do not give job numbers. Simply put, the VE testified that she relied on information from SkillTRAN software for the job numbers, and the ALJ did nothing to establish that the SkillTRAN information is reliable.

The Commissioner also argues that plaintiff does not suggest a reliable method for the VE to use to ascertain job numbers. This argument ignores the fact that the Commissioner bears the burden at step five, not the plaintiff. And, once plaintiff objected to the basis for the VE's testimony, the ALJ was obligated to make an inquiry to determine whether her conclusions are reliable. *Donahue*, 279 F.3d at 446.

The Commissioner warns that accepting plaintiff's argument would place an unusual and unreasonable burden on her. On the contrary, it is already well-established that a VE's testimony constitutes substantial evidence only where it is reliable. *McKinnie,* 368 F.3d at 910. It is surely not unreasonable to expect the ALJ to ask a few direct questions to establish the basis for the VE's testimony about job numbers and to demonstrate that the basis for the VE's opinions is reliable.

Because of the ALJ's error at step five, this case must be remanded. The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that Mr. Russell was disabled during the relevant period or that he should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard, and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

The Commissioner's final decision denying Clifford J. Russell's application for social security disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. §405(g).

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

**DATE: AUGUST 28, 2017**

                                        *s/ J. Phil Gilbert*
                                        **J. PHIL GILBERT**
                                        **UNITED STATES DISTRICT JUDGE**